1  **TERRY V. LEAVITT, ESQ.**
   State Bar I.D. No.: 00295
2  GRAVES & LEAVITT
   601 South Sixth Street
3  Las Vegas, Nevada 89101
   (702) 385-7277
4
5  Counsel for Douglas C. Clemetson
6
7              **IN THE UNITED STATES BANKRUPTCY COURT**
8
9
10             **FOR THE DISTRICT OF NEVADA**
11
12
13
14 In Re                              )
                                      )   Case No. BK-S-02-17818-lBR
15    PARADISE CANYON, LLC,           )   Chapter 11
                                      )
16                 Debtor-in Possession )   Hearing Date:  March 13, 2003
17                                      )   Hearing Time: 9:30 a.m.
18
19         **AMENDED DISCLOSURE STATEMENT IN SUPPORT OF**
20  **DOUGLAS C. CLEMETSON'S FIRST AMENDED PLAN OF REORGANIZATION**
21
22
23
24
25
26
27
28

                                    1

## TABLE OF CONTENTS

I.      INTRODUCTION ........................................................................................ 3

II.     GENERAL DISCLAIMER AND VOTING PROCEDURE ........................... 3

III.    WHO MAY OBJECT TO CONFIRMATION OF THE PLAN ...................... 4

IV.     WHO MAY VOTE TO ACCEPT OR REJECT THE PLAN ......................... 5

V.      VOTES NECESSARY TO CONFIRM THE PLAN ...................................... 6

VI      INFORMATION REGARDING VOTING IN THIS CASE ........................... 6

VII.    DESCRIPTION OF DEBTOR'S PAST AND FUTURE BUSINESS EVENTS
        PRECIPITATING BANKRUPTCY FILING ................................................. 7

VIII.   DESCRIPTION AND TREATMENT OF CLAIMS ..................................... 10

IX.     SOURCE OF MONEY TO PAY CLAIMS .................................................. 18

X.      FINANCIAL RECORDS TO ASSIST IN DETERMINING WHETHER
        PROPOSED PAYMENT IS FEASIBLE ..................................................... 19

XI.     ASSETS AND LIABILITIES OF THE ESTATE ......................................... 19

XII.    TREATMENT OF NONCONSENTING CLASSES ..................................... 20

XIII.   TREATMENT OF NONCONSENTING MEMBERS OF CONSENTING CLASS
        (CHAPTER 7 LIQUIDATION ANALYSIS) ................................................ 21

XIV.    FUTURE DEBTOR .................................................................................... 22

XV.     SALE OF PROPERTY; ASSUMPTION OF CONTRACTS AND LEASES ............... 23

XVI.    TAX CONSEQUENCES OF THE PLAN ................................................... 24

XVII.   EFFECT OF CONFIRMATION OF PLAN ................................................ 25

XVIII.  DECLARATION IN SUPPORT OF DISCLOSURE STATEMENT AND PLAN ...... 29

## I.    INTRODUCTION

Douglas C. Clemetson (hereinafter "Clemetson" or "Proponent") files this Disclosure Statement in Support of Clemetson's proposed First Amended Plan of Reorganization ("Plan") pursuant to Section 1125 of the Bankruptcy Code. The purpose of this Disclosure Statement is to provide adequate information to enable a hypothetical reasonable investor, typical of the holders of claims of interest in this case, to make an informed judgment about the proposed Plan. The source of the information for this Disclosure Statement is disclosed below.

All capitalized terms in this Disclosure Statement shall have the meaning set forth in the Plan, attached as Exhibit "A".

## II.    GENERAL DISCLAIMER AND VOTING PROCEDURE

PLEASE READ THIS DOCUMENT, INCLUDING THE ATTACHED EXHIBITS, CAREFULLY. IT EXPLAINS WHO MAY OBJECT TO CONFIRMATION OF THE PLAN. IT EXPLAINS WHO IS ENTITLED TO VOTE TO ACCEPT OR REJECT THE PLAN. IT ALSO TELLS ALL CREDITORS AND SHAREHOLDERS WHAT TREATMENT THEY CAN EXPECT TO RECEIVE UNDER THE PLAN, SHOULD THE PLAN BE CONFIRMED BY THE BANKRUPTCY COURT.

**THE SOURCES OF FINANCIAL DATA RELIED UPON IN FORMULATING THIS DOCUMENT ARE SET FORTH IN THE DECLARATION IN SECTION XX BELOW.    ALL REPRESENTATIONS ARE TRUE TO THE PROPONENTS BEST KNOWLEDGE.**

**NO REPRESENTATIONS CONCERNING THE DEBTORS THAT ARE INCONSISTENT WITH ANYTHING CONTAINED HEREIN ARE AUTHORIZED EXCEPT TO THE EXTENT, IF AT ALL, THAT THE BANKRUPTCY COURT ORDERS OTHERWISE.**

THE UNITED STATES SECURITIES AND EXCHANGE COMMISSION ("SEC") HAS NOT APPROVED OR DISAPPROVED THE DISCLOSURE STATEMENT, OR DETERMINED THAT IT IS TRUTHFUL OR COMPLETE.

After carefully reviewing this document and the attached exhibits, please vote on the Plan by returning the enclosed ballot it in the enclosed envelope on or before 5:00 p.m. on May 5, 2003. Only ballots that are timely returned will be counted.

The Proponent has reserved a date and time for a hearing to determine whether the Bankruptcy Court will consider the disclosure statement and confirm the Plan. Please refer to time and place of the hearing in the caption on page 1 of the Plan for the specific confirmation hearing date and time. If, after receiving the ballots, it appears that the Proponent has the requisite number of votes required by the Bankruptcy Code, the Proponent will ask the Bankruptcy Court to enter an order confirming the Plan (the "Confirmation Order").

Any opposition to confirmation of the Plan shall be filed and served on the Proponent, those requesting Special Notice and Office of the United States Trustee on or before 5:00 p.m. on May 5, 2003. Untimely oppositions to the Plan will not be considered by the Court.

### III.    WHO MAY OBJECT TO CONFIRMATION OF THE PLAN

"Confirmation" is a technical process for obtaining Bankruptcy Court approval of a Plan of reorganization. At the Confirmation Hearing, in order to confirm the Plan, the Plan Proponent (in this case Clemetson) must demonstrate that they have met the requirements of section 1129 of the Bankruptcy Code. Any party in interest may object to confirmation of the Plan in order to point out how the Plan fails to comply with these requirements, but as explained below, not everyone is entitled to vote to accept or reject the Plan.

/ / /

/ / /

## IV.    WHO MAY VOTE TO ACCEPT OR REJECT THE PLAN

A party must have an Allowed Claim (as defined in the Plan), in order to vote either to accept or reject the Plan.

In order to vote, an Allowed Claim must also be impaired by the Plan. Impaired claims include those whose legal, equitable, and contractual rights are altered by a Plan, even if the alteration is beneficial to the creditor. A contract provision that entitles a creditor to accelerated payment upon default does not, however, necessarily render the claimant impaired, even if a Debtor defaulted and the Plan does not provide the creditor with accelerated payment. The creditor is deemed unimpaired so long as the Plan cures the default, reinstates the maturity of such claim as it existed before default, and compensates for any damages incurred as a result of reasonable reliance upon the acceleration clause.

Unimpaired claimants or equity security holders are deemed to have accepted a Plan. Impaired claims or interests are placed in classes and it is the class that must accept the Plan. Members of unimpaired classes do not vote, although as stated above, they may object to confirmation of a Plan. Even if all classes do not vote in favor of a Plan, a Plan may nonetheless be confirmed if the dissenting classes are treated in a manner prescribed by the Bankruptcy Code. Please refer to Section VIII below for information regarding impaired and unimpaired classes in this case.

Secured claims are placed in separate classes from unsecured claims. Fed. R. Bankr. P. 3018(d) provides:

A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured claim shall be entitled to accept or reject a Plan in both capacities.

/ / /

/ / /

5

## V.    VOTES NECESSARY TO CONFIRM THE PLAN

The Bankruptcy Court may confirm a Plan if at least one impaired class of claims has accepted (without counting the votes of creditors who are "insiders" and if the Plan meets other requirements contained in the Bankruptcy Code. A class of claims has accepted a Plan when more than one-half (1/2) in number and at least two-thirds (2/3) in amount of the allowed claims actually voting, vote in favor of a Plan. Creditors who vote to accept or reject the Plan are not bound by the terms of the Plan until the Bankruptcy Court makes an independent determination that confirmation is appropriate. That is the subject of any upcoming confirmation hearing.

## VI.    INFORMATION REGARDING VOTING IN THIS CASE

The bar date for filing a proofs of claims or interests in this case was November 19, 2002, and the bar date for objecting to claims shall be ninety (90) days after the entry of the Confirmation Order.

In this case, the Proponent believes that Classes 4, 5, 6, 8 and 9 are impaired and therefore entitled to vote, and Classes 1, 2, 3, and 7 are unimpaired and therefore are not entitled to vote. Class 10 is deemed to reject the Plan. A party that disputes the Proponent's characterization of its claim or interest as unimpaired may request a finding of impairment from the Bankruptcy Court in order to obtain the right to vote. Ballots must be received by the Proponent's counsel by 5:00 p.m. on May 5, 2003, and shall be addressed to the following address:

> Terry V. Leavitt, Esq.
> 601 South Sixth Street
> Las Vegas Nevada 89101
> Phone: (702) 385-7277
> Fax:    (702) 385-1178

Except for a party who whishes to change its vote to a vote accepting the Plan, no party shall be allowed to change its vote after it has been submitted to the Proponent's counsel.

## VII.   DEBTOR'S PAST AND FUTURE BUSINESS AND EVENTS PRECIPITATING
## BANKRUPTCY FILING

### A.   Business History and Shareholder Litigation

From its inception in 1999, Debtor has been in the business of owning, developing and operating an 18 hole daily fee resort and golf course known as "Wolf Creek at Paradise Canyon", including an 18,000 (approx.) square foot club house/restaurant/bar/pro shop/cart storage; 2800 square foot "snack shack"; 2,400 square foot maintenance building and pump house facility developed on 172 acres (approx.) of land located north of the East Mesquite/Interstate 15 interchange, together with the fixtures and improvements located on the land.

Debtor's ownership is divided equally between Corcha LLC (an entity controlled by Clemetson) and Mesquite Properties (an entity controlled by Dennis Rider, hereinafter "Rider").

During the calendar years of 1999, 2000 and 2001, Rider was responsible for paying the bills and obligations of Debtor, together with several other entitles jointly owned by companies controlled by Clemetson and Rider (the "Non-Debtor Entities").   Rider was responsible for managing the day-to-day affairs of Debtor and the Non-Debtor Entities.   Rider had authority to sign on the checking accounts of Debtor and the Non-Debtor Entities and to oversee the timely disbursement of funds from the various accounts owed by Debtor and the Non-Debtor Entities. Clemetson has commenced litigation on behalf of himself and (derivatively) on behalf of Debtor and the Non Debtor Entities alleging that during the calendar years of 1999, 2000 and 2001, Rider diverted funds from the Debtor totaling in excess of $3,440,000 to himself, his immediate family members, and other business entities owned or controlled by him.

Allegations of both Mr. Rider and Mr. Clemetson regarding where funds were diverted and who is at fault are set forth in the "Shareholder Litigation" (a defined term in the Plan). (Additional information regarding the Rider/Clemetson dispute is contained below in reference to

Plans treatment of Class 11). Any portion of this recovery belonging to the Re-organized Debtor shall be provided to the Re-organized Debtor to be utilized as working capital in ongoing operation.

### B.    Events Precipitating the Bankruptcy Filing

This bankruptcy filing was precipitated by the cash drain from the Debtor resulting from the actions described in the Shareholder Litigation. Clemetson and Rider disagree about the cause of the cash drain; however, both agree that due to the cash drain the Debtor was unable to meet its debts as they came due.

### C.    Debtor's Future Business Plans

Debtor intends to remain in the business of owning and operating the Wolf Creek resort and golf course. Debtor intends to remedy Debtor's problems by retaining McCumber Golf, Inc., a company specializing in management of golf projects, as an independent manager for the Debtor. After confirmation, Debtor's stock and other assets will be owned by NEO, LLC, a company owned 100% by Clemetson ("Reorganized Debtor").

### D.    Material Post-Petition Events

*On July 12, 2002,* (the "Petition Date") the Court entered its Order Granting Emergency motion for Order Authorizing Debtor in Possession to Pay Pre-Petition Wages, Taxes, Related Benefits and Taxes and to Honor Outstanding Payroll Checks.

*On July 23, 2002,* the Court entered its Interim Order Granting Motion for Emergency Order Authorizing Post-Petition Financing on a Secured Basis (for loans up to $150,000.00).

*On July 29, 2002,* the United States Trustee appointed the Unsecured Creditors' Committee, consisting of U.S. Food Service, F/K/A/Alliant Foodservice, Bullock Brothers Engineering, Inc., Flowtronex PSI, Inc., and Sisna Internet Services.

8

1    *On July 29, 2002*, the Court entered its Order Granting Application to Employ American

2    Property Consultants & Appraisers, Inc. as Appraiser.

3    *On August 26, 2002*, the Court entered its Order Granting Ex Parte Application to

4    Employ Kolesar & Leatham as counsel for the Debtor.

5

6    *On August 28, 2002*, the Court entered its Order Granting the Application of the

7    Unsecured Creditors' Committee to Employ Jeanette McPherson of Schwartzer & McPherson

8    Law Firm as Attorney.

9    *On August 30, 2002*, the Court entered its Order Granting Emergency Motion for Order

10   Authorizing Post Petition Financing on a Secured Basis pursuant to 11 USC 364(d); Granting

11   Adequate Protection pursuant to 11 USC 363 and 364 and Scheduling a Further Hearing Pursuant

12   to Bankruptcy Rule 4001.

13

14   *On October 24, 2002*, the Court entered its Order Granting Motion to Extend time in

15   Which to Assume or Reject Unexpired Leases and Executory Contracts to December 10, 2002.

16   *On October 30, 2002*, the Court entered its Order Granting Second Emergency Motion

17   for Order Authorizing Post Petition Financing on a Secured Basis pursuant to 11 USC 364(d);

18   Granting Adequate Protection pursuant to 11 USC 363 and 364 and Scheduling a Further Hearing

19   Pursuant to Bankruptcy Rule 4001. Pursuant to this Order the Debtor's total borrowings to the DIP

20   Lender will total no more than $845,000 together with interest thereon at thirteen (13) percent per

21
22   annum.

23   *On or about November 8, 2002*, the Debtor's Exclusivity Period expired.

24   *On January 21, 2003*, the Court approved the motion granting Third Emergency Motion

25   For Order (1) Authorizing Post-Petition Financing on a Secured Basis Pursuant to 11

26   U.S.C.§364(d); (2) Granting Adequate Protection Pursuant to 11 U.S.C.§ 363 and 364; and (3)

27   Scheduling a Further Hearing Pursuant to Bankruptcy Rule 4001(b) and (c). The order granted

28

9

additional financing not to exceed $220,000.00 in addition to that financing provided in the October 30, 2002 order.

## VIII.   DESCRIPTION AND TREATMENT OF CLAIMS

### A.    Introduction

The Plan, attached as Exhibit "A" hereto, provides a complete description of claims against the Debtor and their treatment.  In the event of any inconsistency between the Plan and this disclosure statement regarding the claims, the language in the Plan shall prevail.

### B.    Source of Payments.

The Plan assumes that all Plan payments will come from Debtor and or The Reorganized Debtor's cash flow from operations or from the DIP Lender.  The Proponent is usually not required by law to compensate an unsecured creditor or holder of an equity security everything it would otherwise be entitled to receive had a bankruptcy case not commenced.  Further details regarding the source of payment are found on Exhibit "B".

### C.    Timing of Payments.

The timing of payments to many creditors is determined by the Effective Date and the Closing Date, as defined in the Plan.  Administrative Claims, unless otherwise stated, must be paid by the Effective Date.  The timing of payments to other creditors is measured from the Effective Date.  In this case, the Effective Date is thirty (30) days after entry of the order confirming the Plan.  The Closing Date is thirty (30) days after the Effective Date.

### D.    Payment Reserve for Disputed Claims.

The Disbursing Agent will segregate cash in sufficient amount to treat the Disputed Claims under the Plan as though they were allowed in the full amount claimed.  When a Disputed Claim becomes an Allowed Claim, the Disbursing Agent will distribute to the holder thereof the cash or securities necessary to treat the claim in full pursuant to the terms of the Plan in the

allowed amount of the claim. The Debtor, the Proponent, or the Re-organized Debtor may seek estimation of claims under Section 502 of the Bankruptcy Code for all purposes, including voting and distribution. In such event, the amount of the estimated claim shall be used by the Disbursing Agent to determine the amount of equity securities or cash to be reserved for distribution if the disputed claim is allowed. The distributions to holders of Disputed Claims that become allowed claims will be made from the Disputed Claims reserve only.

### E.    Treatment of Claims and Equity Interests.

The Plan divides all creditors of the Debtor or the Estate into Classes, regardless of whether the creditors are entitled to vote.

### F.    Treatment of Administrative Claims and U.S. Trustee Fees.

Pursuant to Section 1123(a)(1) of the Bankruptcy Code, Administrative Claims are not designated as classes for voting purposes since the holders of such claims must be paid in full on the Effective Date and are therefore not entitled to vote on the Plan. The treatment of the claims provided herein is consistent with the requirements of Section 1129(a)(9)(A) of the Bankruptcy Code. Debtor has created **Class 1** for the payments of the US Trustee fees required to be paid and for all Administrative Claims solely as a matter of convenience.

The bar date for Administrative Claims shall be thirty (30) days after entry of the Confirmation Order.

### G.    Summary of Classification and Treatment of Other Classes.

| Class | Treatment |
|---|---|
| **Class 2: Priority Claims.** Holders of all claims for employee payments entitled to priority under Section 507 (a)(3) | **Unimpaired, no solicitation required. Priority Claims will be paid in full in cash on the Effective Date, or as otherwise agreed by a creditor.** |
| **Class 3: Tax Claims.** Holders of all tax Claims against the Debtor entitled to priority under §507(a)(8) of the Bankruptcy | **Impaired, entitled to vote.** Holders of Allowed Claims in Class 3 will be paid on account of their Claims deferred cash payments, over a |

11

§507(a) (8) of the Bankruptcy Code, whether Pre-Petition or Post Petition, to the extent such Claims are allowed by the Court.

period not exceeding six years after the date of assessment of such claim, of a value, as of the Effective Date, equal to the allowed amounts of their Claims. Payments shall commence on the first day of the month next following 30 days from the Closing Date. The Class 3 creditors will be paid in full upon any sale of the Property. At the date of the Plan Debtor is not aware of any Class 3 claims.

**Class 4: Claim of Secured Lender First National Bank of Fulda, Minnesota.**

**Impaired, entitled to vote.**

The treatment of the Class 4 Claim shall be treated as follows:

This claim shall be treated in accordance with the terms and conditions of the existing loan documents as modified and altered by the term sheet attached hereto as **Exhibit "C".**

**Class 5: Claims of Other Secured Creditors.**

**Impaired, entitled to vote.**

CLASS 5A CLAIM OF GREAT AMERICAN LEASING CORPORATION. Class 5A claimant shall have the option, on the Effective Date, to receive the return of its collateral in full satisfaction of its claim or, in the alternative, to receive a restructured promissory note in the original principal amount of the value of its collateral on the Effective Date, bearing interest at the rate of 8% per annum, payable in 60 equal monthly installments of principal and accrued interest. The first payment on the restructured note shall be due on the first day of the month next following thirty days following the Closing Date; subsequent payments shall be due on the 1st day of the first month of each successive month.

CLASS 5B CLAIM OF MADISON CAPITAL LLC. Class 5B claimant shall have the option, on the Effective Date, to receive the return of its collateral in full satisfaction of its claim or, in the alternative, to receive a restructured promissory note in the original principal amount of the value of its collateral on the Effective Date, bearing interest at the rate of 8% per annum, payable in 60 equal monthly installments of principal and accrued interest. The first payment on the restructured note shall be due on the first day of the month next following thirty days following the Closing Date; subsequent payments shall be due on the 1st day of the first month of each successive month.

CLASS 5C CLAIM OF LEASE CORP. OF AMERICA. Class 5C claimant shall have the option, on the Effective Date, to receive the return of its collateral in full satisfaction of its claim or, in the alternative, to receive a restructured promissory note in the original principal amount of the value of its collateral on the Effective Date, bearing interest at the rate of 8% per annum, payable in 60 equal monthly installments of principal and accrued interest. The first payment on the restructured note shall be due on the first day of the month next following thirty days following the Closing Date; subsequent payments shall be due on the 1st day of the first month of each successive month.

CLASS 5D CLAIM OF YAMAHA MOTOR CORP USA. The parties have entered into a stipulation and Court Order resolving this claim. Parties have agreed to treatment of this claim as follows:

Reference is made to said Order on file with the Court for the full agreement between the parties.

CLASS 5E CLAIM OF WESTERN FINANCE LEASE INC. The Debtor and the Class 5E claimant have entered into a stipulation and Court Order resolving this claim. Parties have agreed to treatment of this claim as follows:

Reference is made to said Order on file with the Court for the full agreement between the parties.

CLASS 5F CLAIM OF LEASE EASY GO-TEXTRON. Debtor is current on this obligation and shall continue paying this obligation in accordance with the terms of the contract.

CLASS 5G CLAIM OF LEASE MOUNT OLYMPUS. Debtor is current on this obligation and shall continue paying this obligation in accordance with the terms of the contract.

CLASS 5H CLAIM OF LEASE GE CAPITAL LEASING. Debtor is current on this obligation and shall continue paying this obligation in accordance with the terms of the contract.

CLASS 5I CLAIM OF CITY OF MESQUITE

1
2

(VARIOUS GROUND LEASES AND EFFLUENT REUSE AGREEMENT).

3
4

Debtor is current on these obligations and shall continue paying this obligation in accordance with the terms of the contract.

5
6
7

Copies of this agreement and leases are available upon request at the office of Terry V. Leavitt, Esq., 601 South Sixth Street, Las Vegas Nevada.

8

**Treatment of uncured portion of Class 5 Claims.**

9
10
11

In the event that there are any uncured portions of Class 5 Claims, said portions shall be added to the Class 8 and 9 claims and shall be treated in accordance with the treatment set forth therein.

12
13

**CLASS 6: Allowed Secured**

**Impaired, Not entitled to Vote.**

14
15

**Claim of Clark County.**

Clark County's Allowed Secured Claim shall be paid at closing in accordance with the treatment as set forth in Class 4. Reference made to the term sheet attached hereto as **Exhibit "C".**

16
17

**Class 7: Claim of DIP Lender.**

**Administrative Creditor Not Entitled to Vote.**

18
19
20
21
22
23
24
25
26
27

Class 7 Creditor has agreed pursuant to and conditioned upon confirmation of the Plan, to accept, in full satisfaction of its claim, a Class 7 Subordinated Note, payable in 60 monthly installments of principal and interest beginning on the Payment Commencement Date described below. The Class 7 Subordinated Note shall be secured by the collateral granted by the Orders of the Bankruptcy Court (the DIP Collateral), and is subordinate to Class 4 and Class 9 claims, as set forth in the term sheet (attached as Exhibit "C") and the Standstill Agreement (attached as Exhibit "D"). The Class 7 creditor shall not receive payments on the Class 7 Subordinated Note until the first day of the month following the month in which the Class 4 Creditor and all of the Class 9 Notes are paid in full (the "Payment Commencement Date"). Upon the Payment Commencement Date the Debtor shall commence making monthly payments to the Class 7 Creditor.

28

In exchange for his financial contribution to the

14

Debtor and his agreement to subordinate the Class 7 Note, the Class 7 creditor and his designees shall receive all of the equity of the Reorganized Debtor.

**Class 8: Unsecured Claims of less than $1,000.**

**Impaired, entitled to vote.**

Holders of Allowed Claims in Class 8 will receive an initial dividend of 30% of their claims on the first day of the month next following 30 days from the Closing and an additional dividend of 30% of their claims 120 days following the date of the first payment.

Each holder of an Allowed Claim shall have the option to receive rounds of golf at Wolf Creek in exchange for the allowed amount of their claim which option must be exercised no later than the Effective Date. The exchange rate shall be one round of golf for each $175 of allowed claim, rounded to the nearest amount. Certificates for the golf rounds shall be issued on the Closing Date and shall be for rounds of golf subject to availability. Advance reservations are required.

**Class 9: General Unsecured Claims Greater than $1,000.**

**Impaired, entitled to vote.**

Each holder of an Allowed Claim in Class 9 shall elect treatment under the following options:

**Option 1**: To receive rounds of golf at Wolf Creek in exchange for no less than 30% of the allowed amount of their claim; to participate in a pool of $200,000 for their pro rata portion based upon remaining balance of their claim and to be paid the remaining balance of their claim after the reductions in accordance with Option 2. The distribution from the $200,000, to be contributed by the Proponent, pool shall be made to holders of allowed claims on the first of the month next following 30 days from the Closing Date. The exchange rate shall be one round of golf for each $175 of allowed claim, rounded to the nearest amount. The option must be exercised no later than Effective Date. Certificates shall be issued on the Closing Date and shall be for rounds of golf subject to availability. Advance reservations are required.

**Option 2**: To receive in full satisfaction of their claims a restructured promissory note for the full amount of their Allowed Claim, without interest, to be paid in 60 equal monthly installments with the first installment to be paid on the first day of the month next following 30 days from the Closing Date. Provided, however, that if the

15

Property is sold, holders of Allowed Claims in Class 9 will be paid the net proceeds from any sale of the Property after payment to the Class 3 and Class 4 creditors – up to the full remaining balance of their modified claims as modified herein, together with interest on the remaining balance.

Treatment applying to both Option 1 and Option 2:

Payment of the Class 9 Notes shall be secured by a single deed of trust on Debtor's Property (the "Class 9 Deed of Trust") which shall be senior to the deed of trust of the Class 7 Creditor (the DIP Lender) and subordinate to the Deed of Trust of the Class 4 Creditors and which shall be administered by a person nominated by the Official Committee of Unsecured Creditors.

The Class 7 Creditor shall subordinate his deed of trust to the Class 4 Deed of Trust and the Class 9 Deed of Trust.

**The treatment of the Class 9 Deed of Trust is subject to the terms of the STAND STILL AGREEMENT attached hereto as Exhibit "D". Please read the terms of this agreement carefully.**

Holders of Allowed Claims in Class 9 who do not vote to accept the Plan shall be deemed to have elected Option 1.

## H.  Treatment of Equity Interest Holders.

Class 10, the holders of Equity Securities in the Debtor (Corcha LLC and Mesquite Properties) will not receive or retain any property under the Plan and are deemed to reject the Plan.

## I.  Disputed Claim of Dennis Rider.

Class 11, Dennis Rider, shareholder of the Debtor, has filed a proof of claim separate and apart from his equity interest in the Debtor.  This claim is disputed and is classified as a Class 11 claim.  The following is an explanation of said claim:

Rider and Clemetson have been embroiled in a dispute over the management and control of Debtor and other unrelated business ventures owned jointly between them for some time prior to

16

the filing of this instant case. On or about June 2002 Clemetson filed suit against Rider and the Debtor among numerous other named Defendants, alleging fraud, civil conspiracy, breach of fiduciary duties, conversion, unjust enrichment, constructive trust, injunction, and appointment of a receiver. Rider and the Debtor filed a Counterclaim, Cross-claim and Third Party Complaint against Clemetson and other named defendants on or about July 2002 alleging fraud, civil conspiracy, conversion/defalcation, unjust enrichment, breach of contract, breach of implied covenant of good faith and fair dealing, breach of fiduciary duty, breach of contract - 50/50 entities, breach of contracts for design/development/management, intentional interference with contractual relations, negligence, and accounting. This case is still pending before the Eighth Judicial District Court, Clark County, Nevada, Case No. A451602.

As a result of their various disputes and the pending lawsuit regarding the Debtor and their other business ventures, Rider and Clemetson agreed to file the Debtor in a Chapter 11 bankruptcy proceeding.

Clemetson assisted in the preparation of, and signed on behalf of the Debtor, the bankruptcy petition and its amendments. Therein, Rider was listed as a general unsecured creditor in a sum of $0.

Rider asserts that he is a general unsecured creditor in the minimum amount of $5,247,742.92 and should be entitled to a vote, if not as a general unsecured creditor then as a separate class subordinate to the general unsecured creditors. Clemetson and the unsecured creditors committee dispute that Rider is owed the sum in question. The unsecured creditors committee is filing an objection to said claim. It is their position that this claim has no merit and should not be paid. Should the Court find that Rider is entitled to any payment under the Plan, then the Plan would treat such claim as a separate class of creditor to be subordinated to the claims of general unsecured creditors and to be paid after payment of all other classes.

17

## IX. SOURCE OF MONEY TO PAY CLAIMS – SALE, FUNDS FROM OPERATIONS
## AND LOANS

The Plan cannot be confirmed unless the Bankruptcy Court finds that it is "feasible," which means that the Proponent has timely submitted evidence establishing that the Debtor will have sufficient funds available to satisfy all expenses, including the scheduled creditor payments discussed above.

Debtor will, within two years of the Effective Date of the Plan, list the Property for sale with a real estate broker approved by counsel for the Creditors' Committee for an all-cash purchase price, which will net no less than an amount sufficient to pay all creditors of the Reorganized Debtor in full, as provided herein. The Reorganized Debtor hereby commits to accept any such offer, subject only to determining the financial capability of the proposed buyer. In the interim, prior to such sale, Reorganized Debtor will use future earnings from continued operations of its businesses and/or an infusion of capital consisting of a loan in order to fund the Plan. Cash Flow projections and assumptions for the duration of Plan payments are attached as Exhibit "B". All non-cash items such as depreciation, amortization, gains and losses are omitted. A positive number reflects a source of cash; a (negative number) reflects a use of cash. On the Effective Date, the Plan pays allowed priority claims, less certain priority tax claims paid over time and all allowed administrative claims, except where an administrative claimant, such as Proponent, has agreed to a differing treatment.

Additional DIP financing totaling up to amounts necessary to fund all payments due on the Effective Date and the Closing Date is to be advanced by the DIP Lender. The DIP Loan is secured by a first lien upon all real and personal property of the Debtor, subject to subordination to the deeds of trust of Class 4 and Class 9 claims.

18

The DIP Lender is Douglas Clemetson, Proponent of the Plan who is also the manager of Corcha LLC, one of Debtor's equity security holders.

## X.    FINANCIAL RECORDS TO ASSIST IN DETERMINING WHETHER THE PROPOSED PLAN PAYMENTS ARE FEASIBLE

Attached as Exhibit "F" are the income and expense statements for 2001 and the first nine months of 2002. The cash flow statements and projections were prepared by McCumber Golf, Inc. based upon their experience managing the Debtor and managing other golf projects described in their resume which is attached as part of Exhibit "J". Information from Debtor's General manager, Ms. Linda Moore, was provided as a basis of the McCumber projections. Ms. Moore's resume is attached as a part of Exhibit "J"

The cash flow statements track income from Debtor's business operations and do not include any recoveries from the Shareholder Litigation or from loans.

The cash flow statements indicate that the Debtor is able to make the payments proposed under the Plan without funds from litigation recovery or post-confirmation loans. However, any portion of the proceeds recovered in the Shareholder litigation belonging to the Reorganized Debtor shall be provided to the Reorganized Debtor to be utilized as working capital in ongoing operations.

## XI.    ASSETS AND LIABILITIES OF THE ESTATE

### A.    Assets

The identity and fair market value of the estate's assets, except for avoidance actions, are listed in the Debtor's schedules attached as Exhibit "F" so that the reader can assess what assets are at least theoretically available to satisfy claims and to evaluate the overall worth of the bankruptcy estate.

1         The Committee and its counsel shall have the option to pursue any avoidance actions for

2   the benefit of the creditors in Class 9.

3   **B.    Liabilities**

4         Portions of Debtor's schedules, which have been filed with the court, are attached as

5   Exhibit "G" to reflect the allowed claims against the estate, claims whose treatment is explained in

6   detail by section VIII.

7

8   **C.    Objections to Claims**

9         Debtor has not been able to review the filed proofs of claim and to determine which

10  claims are objectionable. Debtor, the Reorganized Debtor, the Proponent, or the Committee will

11  file objections to claims within 90 days following the Effective Date.

12

13              **XII.    TREATMENT OF NONCONSENTING CLASSES**

14        As stated above, even if all classes do not consent to the proposed treatment of their

15  claims under the Plan, the Plan may nonetheless be confirmed if the dissenting classes are treated

16  in a manner prescribed by the Bankruptcy Code. The process by which dissenting classes are

17  forced to abide by the terms of a Plan is commonly referred to as "cram down." The Bankruptcy

18  Code allows dissenting classes to be crammed down if the Plan does not "discriminate unfairly"

19  and is "fair and equitable." The Bankruptcy Code does not define discrimination, but it does

20  provide a minimum definition of "fair and equitable." The term can mean that secured claimants

21  retain their liens and receive cash payments whose present value equals the value of their security

22  interest. For example, if a creditor lends the Debtors $100,000 and obtains a security interest in

23  property that is worth only $80,000, the "fair and equitable" requirement means that the claimant

24  is entitled to cash payments whose present value equals $80,000 and not $100,000. The term

25  means that unsecured claimants whose claims are not fully satisfied at least know that no claim or

26  interest that is junior to theirs will receive anything under the Plan.

27

28

Therefore, if a class of general unsecured claims votes against the Plan, the Plan cannot be confirmed where the Debtor or a class of interest holders (e.g. shareholders or partners) will receive or retain any property under the Plan, unless the Plan provides that the class of general unsecured claims shall be paid in full with interest. These are complex statutory provisions and the preceding paragraphs do not purport to state or explain all of them.

**Under the Debtor's Plan neither Corcha LLP nor Mesquite Properties, the Debtor's equity interest holders, will receive or retain any property on account of their interests.**

## XIII.    TREATMENT OF NONCONSENTING MEMBERS OF CONSENTING CLASS (CHAPTER 7 LIQUIDATION ANALYSIS)

The Plan must provide that a non-consenting impaired claimant or equity security holder of a consenting class receive at least as much as would be available had the Debtors filed a Chapter 7 petition instead.

In a Chapter 7 case, the general rule is that a Debtor's assets are sold by a trustee. Unsecured creditors share in the proceeds of sale only after secured creditors and administrative claimants are paid.   Certain unsecured creditors get paid before other unsecured creditors. Unsecured creditors with the same priority share in proportion to the amount of their allowed claim in relationship to the total amount of allowed claims.

If the Debtor's estate were liquidated under Chapter 7 it is unlikely that creditors other than the secured creditors (Classes 4 and 5) and the DIP Lender creditor would recover anything from the assets of the bankruptcy estate unless a Chapter 7 bankruptcy trustee were able to obtain a significant recovery from the Shareholder Litigation. The value of the Shareholder Litigation is speculative.  A Chapter 7 Trustee would have little if any cash available to fund the litigation, which is being funded by Clemetson and will continue to be funded by Clemetson after

1  confirmation of The Plan. The Debtor's causes of action are disputed and the possibility of
2  recovery is uncertain. The liquidation value of Debtor's real property is speculative.

3       In a Chapter 7 case, a trustee is appointed and is entitled to compensation from the
4
   bankruptcy estate in an amount no more than twenty-five percent (25%) of the first $5,000 of all
5
   monies disbursed, ten percent (10%) on any amount over $5,000 but less than $50,000, five
6
7  percent (5%) on all amounts over $50,000  but less than $1,000,000, and reasonable compensation
8  not to exceed three percent (3%) on any amount over $1,000,000. Debtor's liquidation analysis is
9  attached as Exhibit "H".

10                              **XIV.    FUTURE DEBTOR**

11        **A.    Reorganized Debtor's Management.**
12
        The Reorganized Debtor will be owned 100% by Clemetson.   Debtor's financial
13
   operations will be managed by Mr. Doug Clemetson.    Mr. Clemetson's resume is attached as
14
15 Exhibit "I". Mr. Clemetson will receive no salary or compensation for his services during the term
16 of the Plan.

17        Debtor's business operations will continue to be managed by the McCumber Group. The
18 McCumber Group is not affiliated with Debtor's current or future shareholders. A resume of the
19 McCumber Group is attached as Exhibit "J".
20
        **B.    Disbursing Agent.**
21
        Unless otherwise provided herein, The Reorganized Debtor shall be the disbursing agent
22
23 (the "Disbursing Agent"), and is responsible for collecting money intended for distribution to
24 claimants and transmitting it to them. The Disbursing Agent's address is:

25        Mr. Doug Clemetson
          5310 Kietzke Lane, Suite 204
26        Reno, NV 89511
          Telephone No.: (775)-829-7200
27        Facsimile No.: (775)-829-7222
          Cellular No.:    (775)-772-5339
28

                                    22

The Disbursing Agent will not receive compensation from the Reorganized Debtor.

The Disbursing Agent shall be empowered to: (A) take all steps and execute all instruments and documents necessary to effectuate the Plan; (B) make distributions contemplated by the Plan; (C) comply with the Plan and its obligations there under; and (D) file, litigate, settle or withdraw all objections to any claims filed against the Debtor.

The Debtor shall make all distributions required under the Plan with respect to the Class 1,2, 3, 4, 5, 6, 7, 8, and 9 Claims.

## C.    Future Financial Outlook

Proponent believes that the Debtor's economic health will improve from its pre-bankruptcy state because of the infusion of working capital by the DIP Lender; the placement of Doug Clemetson as new President and CEO, the consequent removal of other officers and directors, and the restructuring of Debtor's debt load through the reorganization.

## XV.    ASSUMPTION OF CONTRACTS AND LEASES; OTHER PROVISIONS

The Plan constitutes a motion by the Debtor to assume, as of the confirmation date, the contracts listed in Exhibit "K" attached hereto. Debtor may amend Exhibit "K" at any time until the commencement of the confirmation hearing.  No cure of such contracts pursuant to Bankruptcy Code Section 365(b)(1)(A) is necessary other than the cure payments listed on Exhibit "A", and no Bankruptcy Code Section 365(b)(1)(b) compensation is owing or shall be owing upon the assumption of such contracts.  Confirmation of this Plan shall be deemed (i) adequate assurance of prompt cure of any default under such contracts solely based on the Debtor's obligations in the Plan to make cure payments and (ii) adequate assurance of future performance under such contracts.

The Plan constitutes and incorporates a motion by the Debtor to reject, as of the confirmation date, all pre-petition date contracts to which the Debtors are a party, except for any

1    contracts that have been assumed or rejected pursuant to an order of the bankruptcy court prior to

2    the confirmation date or which is included in Exhibit "K" attached hereto. If the rejection of the

3    contract results in damages to the other party or parties to such contract, a claim for such damages,

4
5    if not heretofore evidenced by a filed proof of claim filed on or before the proof of claim bar date

6    of November 19, 2002, shall be forever barred and shall not be enforceable against the Debtor or its

7    respective properties or their agents, successors or assigns.

8          Notwithstanding anything in this Plan to contrary, all insurance policies under which the

9    Debtor is an insured party, shall be deemed assumed as of the confirmation date.

10

### XVI.    TAX CONSEQUENCES OF PLAN

11          The Plan does not effect a transfer of any of the Debtor's assets, other than money to pay

12
13    Debtor's creditors. Accordingly the Plan will cause no capital gains to the Debtor. The Plan will

14    result in ordinary income to the Debtor to the result that the Debtor's debts are fully satisfied for

15    less than the amount, which would be due outside of a bankruptcy proceeding. Debtor has net

16    operating losses sufficient to offset any ordinary income, which may result from the discharge of

17    debt. Accordingly, Debtor does not believe that Debtor will suffer any negative tax consequences

18    as a result of confirmation of the Plan.

19          CREDITORS AND EQUITY SECURITY HOLDERS WHO ARE IMPAIRED UNDER

20    THE PLAN SHOULD CONSULT THEIR OWN ACCOUNTANTS, ATTORNEYS AND/OR

21
22    ADVISORS FOR THE TAX IMPLICATIONS INVOLVED WITH THE MODIFIED

23    TREATMENTS THEY ARE TO RECEIVE UNDER THE PLAN.

24    / / /

25    / / /

26    / / /

27    / / /

28

## XVII.    EFFECT OF CONFIRMATION OF PLAN

### A.    General Comments.

The provisions of a confirmed Plan bind the Debtor, any entity acquiring property under the Plan, and any creditor or equity security holder of the Debtor, even those who do not vote to accept the Plan. The confirmation of the Plan will vest all property of the estate in the Debtor.

### B.    Modification of the Plan.

The Proponent may modify the Plan at any time before confirmation. The Proponent may modify the Plan at any time after confirmation and before substantial consummation, but only if circumstances warrant and after notice and hearing.

### C.    Post-Confirmation Reporting.

Pursuant to LR 3020 and paragraph 7.2 of the U.S. Trustee Guidelines, until the entry of the Final Decree (defined below), Reorganized Debtors shall file with the Clerk of the Bankruptcy Court, not later than four (4) months after the entry of the confirmation order, and every three (3) months thereafter, a report of the action taken by Reorganized Debtors and the progress made toward consummation of the Plan. The report shall include, at a minimum, the following information:

A schedule of any personal property costing more than $5,000 and any real property acquired since confirmation of the Plan and the price paid for each;

A schedule listing each debt, the total amount required to be paid under the Plan, the amount required to be paid to date, the amount actually paid to date, and the amount unpaid;

A schedule of executory contracts entered into after Plan confirmation;

A statement listing each post-petition tax (i.e., income, payroll, property, sales), and payee and the amount actually paid; and

The progress toward completion of the confirmed Plan and a list and status of any pending adversary proceedings or motion and resolution expected.

### D.    U.S. Trustee Fees.

Debtor is obligated to pay U.S. Trustee quarterly fees based upon all disbursements of the Debtor and in accordance with the sliding scale set forth at 28 U.S.C. ' 1930(a)(6). These fees accrue throughout the pendency of these Chapter 11 cases until entry of the Final Decree. U.S. Trustee fees paid prior to confirmation of this Plan will be reported in operating reports required by 11 U.S.C. ' 704(8), 1106(a)(1), 1107(a) and the U.S. Trustee Guidelines. All U.S. Trustee quarterly fees accrued prior to confirmation of this Plan will be paid by the Reorganized Debtor on or before the Effective Date pursuant to 11 U.S.C. ' 1129(a)(12). All U.S. Trustee fees accrued post-confirmation will be timely paid on a calendar quarter basis and reported both on post-confirmation reports required by L.R. 3020, and in post-confirmation operating reports required by the U.S. Trustee Guidelines. Final fees will be paid on or before the entry of the Final Decree.

### E.    Final Decree.

Once the Plan has been consummated, a final decree (the "Final Decree") may be entered upon motion of the Proponent. The effect of the Final Decree is to close the bankruptcy case. After such closure, a party seeking any type of relief relating to a Plan provision can seek such relief in a state court of general jurisdiction.

### F.    Continued Jurisdiction.

The Bankruptcy Court shall retain jurisdiction after the Effective Date for the following purposes:

To hear and determine any and all objections to the allowance of any claim or controversy over the classification thereof;

To hear and determine any and all applications for compensation or reimbursement of expenses pursuant to Sections 330 or 1129 of the Bankruptcy Code or as otherwise provided for in the Plan, or for expenses or compensation pursuant to Sections 503(b)(3) through (5) of the Bankruptcy Code;

To liquidate, estimate or disallow any Disputed Claim or contingent or un-liquidated claims:

To correct any defect, cure any omission or reconcile any inconsistency in the Plan or in the confirmation order as may be necessary to carry out the purpose and the intent of the Plan;

To facilitate confirmation of the Plan by entering, consistent with the provisions of the Plan, any further necessary or appropriate orders regarding the enforcement of the Plan or its provisions;

To resolve any issues or matters regarding U.S. Trustee quarterly fees; and

To enter an appropriate Final Decree in these Chapter 11 cases.

**G.    Discharge of Debtor.**

The Plan shall discharge all existing debts and claims of any kind, nature or description whatsoever against the Debtor or any of its assets or properties to the fullest extent permitted by Section 1141 of the Bankruptcy Code; upon the Effective Date, all existing claims against the Debtor shall be, and shall be deemed to be, discharge; all holders of claims shall be precluded from asserting against the Debtor or any of its assets or properties, any other or further claims based upon any acts or omissions, transaction or other activity of any kind or nature that occurred prior to the Effective Date, whether or not such holder filed a proof of claim.

**H.    Exemption from Transfer Taxes.**

Pursuant to Section 1146(c) of the Bankruptcy Code, (I) the issuance, distribution, transfer or exchange of the Debtor's new equity interests or other Estate property; (ii) the creation, modification, consolidation or recording of any deed of trust or other security interest, the securing

1    of additional indebtedness by such means or by other means in furtherance of, or connection with

2    this Plan or the Confirmation Order; (iii) the making, assignment, modification or recording of any

3    lease or sublease; or (iv) the making, delivery or recording of a deed or other instrument of transfer

4    under, in furtherance of, or in connection with, this Plan, Confirmation Order or any transaction

5    contemplated above, or any transactions arising out of, contemplated by or in any way related to

6    the foregoing shall not be subject to any document recording tax, stamp tax, conveyance fee,

7    intangibles or similar tax, mortgage tax, stamp act or real estate transfer tax, mortgage recording

8    tax or other similar tax or governmental assessment and the appropriate state and local government

9    officials or agents shall be, and hereby are, directed to forego the collection of any such tax or

10   assessment and to accept for filing or recordation any of the foregoing instruments or other

11   documents without the payment of any such tax or assessment.

12

13   **I.    Exculpation.**

14

15        The Debtor, Reorganized Debtor and the Disbursing Agent and their respective present or

16   former members, directors, officers, employees, advisors, attorneys or agents, shall not have or

17   incur any liability to any holder of a claim or equity security interest, or any other party in interest,

18   or any of their respective agents, employees, representatives, financial advisors or attorneys, or any

19   of their successors or assigns, for any act or omission in connection with, relating to, or arising out

20   of these Chapter 11 cases, the pursuit of confirmation of the Plan, or the consummation of the Plan,

21   except for their willful misconduct, and in all respects shall be entitled to rely upon the advice of

22   counsel with respect to their duties and responsibilities under the Plan or in the context of these

23   cases. No holder of a claim or equity security interest, or any other party in interest, including their

24   respective agents, employees, representatives, financial advisors, or attorneys, shall have any right

25   of action against the Debtor, Reorganized Debtor, the Disbursing Agent, or any of their respective

26   present or former members, directors, officers, employees, advisors, attorneys or agents, for any act

27

28

28

1  or omission in connection with, the pursuit of confirmation of the Plan, or the consummation of the
2  Plan, except for their willful misconduct.   However, this does not exculpate The Debtor,
3  Reorganized Debtor, The Disbursing Agent, or any of their respective present or former members,
4
   directors, officers, employees, attorney or agents from any avoidance action or from any liability on
5
6  personal guarantees they may have given to any creditor or other party in interest in this case.

7         **J.      Injunctions.**

8         The confirmation order shall contain such an injunctions as may be necessary and helpful
9  to effectuate the discharge of the Debtor provided herein.   Without limiting the generality of the
10 foregoing, such injunction shall include an absolute prohibition from collecting claims in any
11 manner other than as provided for in the Plan.

12
          **K.      Creditor Default.**
13

14        Any act or omission by a Creditor or Equity Security Holder in contravention of a provision
15 of this Plan shall be deemed an event of default under this Plan.  Upon an event of default, Debtor
16 may seek to hold a defaulting party in contempt of the confirmation order.  If such Creditor or
17 Equity Security Holder is found to be in default under the Plan, such party shall pay the reasonable
18 attorneys' fees and costs of Debtor in pursuing such matter.

19
          **L.      De-Minimus Distributions.**
20

21        Neither Debtor nor the Disbursing Agent shall be obligated to make distributions of any
22 kind to any holder of an allowed claim that is less than $50.00.

23 **XVIII.   DECLARATION IN SUPPORT OF DISCLOSURE STATEMENT AND PLAN**

24        The undersigned, Douglas Clemetson, declares under penalty of perjury under the laws of
25 the United States of America that the following statements are true and based upon personal
26 knowledge:

27

28

1    The law firm of GRAVES & LEAVITT, by Terry V. Leavitt, Esq., counsel for Douglas

2    Clemetson, is the entity who prepared this document, and we have reviewed the same in its entirety

3    and approved the contents thereof.

4
         The source of all financial data is Paradise Canyon, LLC., and its manager McCumber
5
     Golf.
6

7        All facts and representations in the Plan and Disclosure Statement are true to the best of

8    my knowledge.

9        No fact material to a claimant or equity security holder in voting to accept or reject the

10   proposed Plan has been omitted.

11       McCumber Golf prepared the cash flow projections based upon information provided by

12   the Debtor.

13
         The accounting method(s) used to prepare the cash flow projections and the other
14
     financial documents are according to GAAP.
15

16

17   Dated: ___ $April$ 3, 2003

18

19                                      _Douglas C Clemetson_

20                                      Douglas C. Clemetson
                                        Proponent
21

22   Dated this ___ day of April 2003

23                                      GRAVES & LEAVITT

24

25   By_____
                                        TERRY V. LEAVITT, ESQ.
26                                      601 South Sixth Street
                                        Las Vegas, Nevada 89101
27                                      (702) 385-7277

28

                                30

**EXHIBIT LIST**

| | |
|---|---|
| EXHIBIT "A" | Plan of Reorganization |
| EXHIBIT "B" | Post-Confirmation Cash Flow Projections |
| EXHIBIT "C" | Term Sheet |
| EXHIBIT "D" | Stand Still Agreement |
| EXHIBIT "E" | Income and Expense Statements for 2001 and first 9 months of 2002. |
| EXHIBIT "F" | Description of Real and Personal Property and Opinion of Fair Market Value Assuming Debtor can obtain all property included. |
| EXHIBIT "G" | Liabilities |
| EXHIBIT "H" | Liquidation Analysis |
| EXHIBIT "I" | Doug Clemetson Resume and List of Affiliations |
| EXHIBIT "J" | McCumber Group Resume |
| EXHIBIT "K" | Debtor's Assumed Contracts |

**EXHIBIT "A"**